**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DEONDRA S. PARKS,**

        **Plaintiff,**        **CIVIL ACTION NO. 14-cv-10633**

   **vs.**

                              **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Deondra Parks seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff also filed a Response to Defendant's Motion. (Docket no. 16.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.     RECOMMENDATION:**

      The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 14) be GRANTED IN PART AND DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 15) be DENIED. This matter should be remanded for proper discussion and

consideration of Dr. Tobia's opinions with regard to Plaintiff's functional limitations and so that the ALJ can clarify his findings with regard to Plaintiff's credibility.

## II. PROCEDURAL HISTORY:

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits with protective filing dates of October 2, 2012, alleging that she had been disabled since August 21, 2011, due to back pain, shoulder pain, anxiety, and depression. (*See* TR 23, 26, 44.) The Social Security Administration denied benefits. (*See* TR 23.) Plaintiff requested a *de novo* hearing, which was held on August 27, 2013, before Administrative Law Judge (ALJ) Melvyn B. Kalt, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 23-33.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony and Medical Record

In August of 2011, Plaintiff fell at work and injured her back. Since that time, she has complained of back pain related to her injury.[1] Plaintiff (docket no. 14 at 5-12), Defendant (docket no. 15 at 6-9), and the ALJ (TR 27-31) each set out a factual background related to Plaintiff's medical record and her hearing testimony. Although focused on different portions of the record, the Court finds that there are no inconsistencies between the three accounts except for those discussed further herein; thus the Court will incorporate them by reference. The undersigned has conducted

---

[1] While the ALJ found that Plaintiff suffered from multiple severe impairments and set forth limitations related to the same, Plaintiff's Motion challenges the ALJ's findings only with regard to her back-related pain.

an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

### C. The Vocational Expert

The ALJ first asked the VE whether Plaintiff could perform any work if her testimony were fully credited. (TR 52.) The VE testified that she could not. (*Id.*) The ALJ then asked the VE to assume that the claimant had the following limitations:

> . . . . [she] was limited to lifting no more than ten pounds. That she could not use the left upper extremity above shoulder level. That she required the ability to sit or stand as she wished. And that she could perform no job that require more than the most occasional bending; that there would be no requirement for interaction with co-workers or the general public; and, finally, that the claimant was limited to the performance of simple unskilled work of no more than two or three steps.

(TR 53.) After clarifying that the ALJ did not intend to exclude all contact with co-workers, he asked the VE whether there were any jobs that Plaintiff could perform. (TR 53-54.) The VE testified that Plaintiff could perform some assembly, packaging, and inspection jobs, which related to about 2,000 jobs in the regional economy. (TR 54.) On request, the VE noted that the vocationally limiting factors in Plaintiff's testimony were "the need to lie down[; t]he need to nap two or three times a day [for] one hour or so each time; the need to isolate[; and] . . . the level of pain." (TR 54.)

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2015; that although Plaintiff had worked part-time as a lunch aide in 2012 and 2013, she had not engaged in substantial gainful activity since August 21, 2011, the date of her alleged onset; and that she had severe degenerative disc disease of the lumbar spine, hypertension, anxiety, and depression. (TR 25-26.) The ALJ further found that her impairments did not meet or equal

those listed in the Listing of Impairments. (TR 26-27.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not credible and that Plaintiff had the ability to perform sedentary work with the following additional limitations:

> sit/stand option at will; no use of the left upper extremity above shoulder level; only occasional bending; simple unskilled work with no more than two or three steps; and no work involving interaction with coworkers or the general public.

(TR 27.) The ALJ then determined, in reliance on the VE's testimony and the medical vocational guidelines, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 32-33.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act. (TR 33.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

      **B.**      **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

      (1)      Plaintiff was not presently engaged in substantial gainful employment; and

      (2)      Plaintiff suffered from a severe impairment; and

      (3)      the impairment met or was medically equal to a "listed impairment;" or

      (4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence"

may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because (1) the ALJ improperly applied the treating-physician rule with regard to Plaintiff's primary care physician, Dr. Tobia; and (2) the ALJ's opinion contains factual errors, which resulted in an improper credibility determination and improper consideration of several medical opinions. (Docket no. 14 at 14-24.)

### 1. The ALJ's Assessment of Dr. Tobia's Opinion

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). But it is equally well settled that the ultimate

issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

But regardless of the weight ultimately afforded, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to

7

controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Notably, though, the Sixth Circuit has upheld the decision of an ALJ that gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). That is, there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

In determining Plaintiff's RFC, the ALJ discussed Dr. Tobia's opinion:

As for opinion evidence, the claimant's treating physician, Matihal Tobia, M.D., reported in October 2012 that the claimant could not sit or stand for more than thirty minutes at a time. Again, the residual functional capacity accommodates this with an at will sit/stand option. However, Dr. Tonia (sic) also completed a Physical Residual Functional Capacity Questionnaire on June 25, 2013. Dr. Tobia opined that the claimant's conditions result in the following: sitting less than 2 hours total out of an 8-hour workday, standing and walking less than 2 hours total out of an 8-hour workday as well as the need for unscheduled breaks of 5-10 minutes every 20-30 minutes. It was further opined that she was likely to be off task more than 25% of a typical workday and that she was likely to have "good days" and "bad days," causing her to miss about 3 workdays per month which amounts to an opinion of an

> inability to perform competitive employment.
>
> No persuasive weight is granted to Dr. Tobia's opinion of complete disability. First, treating source's (sic) statement regarding disability is an issue reserved to the Commissioner. Further, a treating physician's opinion regarding an individual's specific limitations is entitled to controlled weight only if it is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the remaining evidence. However, Dr. Tobia's treatment notes are completely inconsistent with the opinion evidence he has offered. For example, in March 2013, Dr. Tobia noted that the claimant's mental status was normal and that her gait, muscle tone, and motor reflexes were all normal. In fact, as early as February 2012, the claimant was described by Dr. Tobia as having lost weight and as being more active and more energetic overall.

(TR 31.) Plaintiff argues that the ALJ's rationale for discounting Dr. Tobia's opinion does not provide good reason for his determination. The undersigned agrees. While he need not specifically discuss all of the regulatory factors, the ALJ, here, relied solely on two "inconsistent" statements in Dr. Tobia's treatment notes. As Plaintiff asserts, however, these two examples are taken out of context and are not actually inconsistent with Dr. Tobia's opinion.

With regard to the February 2012 treatment note, Plaintiff visited Dr. Tobia as part of a "follow up" appointment for her gastric bypass surgery – not for her back issues. (TR 264.) Dr. Tobia noted "a reported to (sic) 70 pound weight loss from her last weekend before her surgical date. She feels great[;] she has been more active less lethargic and more energetic[.]" (*Id.*) But he also noted "back pain" and "hypertension" as part of his "assessment" and he prescribed "tramodol 3 times a day as needed for back pain." (TR 265.) Defendant asserts that the ALJ's interpretation of this evidence is acceptable because "it is entirely possible that losing 70 pounds could have alleviated back pain" and because "[r]egardless of whether the improvement was from gastric bypass, physical therapy, medication, or some combination of the three, the record clearly shows that Plaintiff's symptoms improved." (Docket no. 15 at 13.) While Defendant's argument has merit, "it is the ALJ's rationale that is under review, not defense counsel's." *Christephore v.*

*Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.). The ALJ merely found that this treatment note was "completely inconsistent" with Dr. Tobia's opinion, but he provides no explanation with regard to *how* the note is inconsistent. The portion of the note on which the ALJ relies is related to Plaintiff's weight loss, and the remaining portion of the note references her continued back pain.

With regard to the March 2013 treatment note, Plaintiff visited Dr. Tobia following an accident where she was rear-ended by another car. (TR 384.) The ALJ accurately noted that Dr. Tobia found "that the claimant's mental status was normal and that her gait, muscle tone, and motor reflexes were all normal," but the ALJ failed to acknowledge that Plaintiff was "still experiencing pain radiating to both upper extremities and a headache" and that Dr. Tobia noted "[n]eck and back pain" as part of his assessment. (TR 384-85.) Again, when considered in context, this treatment note is not "completely inconsistent" with Dr. Tobia's opinion.

In addition to the above, while not discussed by the Parties, the undersigned finds troubling the ALJ's determination that Dr. Tobia's opinion "amounts to an opinion of an inability to perform competitive employment." While the ALJ is correct that a "treating source's statement regarding disability is an issue reserved to the Commissioner," Dr. Tobia made no such finding. To the contrary, the document on which the ALJ relies in reaching this conclusion is a Physical RFC Questionnaire in which Dr. Tobia provided his opinions with regard to specific functional limitations. (TR 353-56.) But it is precisely this type of information on which the ALJ is supposed to rely in reaching a conclusion with regard to disability. To hold otherwise would make the submission of opinion evidence a futile exercise; that is, an ALJ would only be required to consider a physician's opinion if the limitations therein resulted in a finding of "not disabled."

For the reasons stated, the Court should grant Plaintiff's Motion and remand this matter for

proper discussion and consideration of Dr. Tobia's opinions with regard to Plaintiff's functional limitations.

### 2. The Evidence of Record and Plaintiff's Credibility

Plaintiff next asserts that the ALJ mischaracterized evidence and applied improper standards of law in determining Plaintiff's credibility. (Docket no. 14 at 18-22.) Defendant responds to some of the specific factual contentions but asserts generally that the medical evidence supports the ALJ's determination. (*See* docket no. 15 at 14-16.) The undersigned agrees with Plaintiff that the ALJ erred with regard to his credibility finding.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about

11

the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

As Plaintiff notes, in reaching his conclusion that Plaintiff's statements were not credible, the ALJ relied, in part, on Plaintiff's post-onset employment, including her attendance record (TR 30-31); her failure to seek treatment immediately following her August 2011 injury (TR 28); Dr. Tobia's statement that she was more active following her gastric bypass surgery (TR 28); and her activities of daily living (TR 30). With regard to her post-onset employment, the ALJ acknowledged that Plaintiff was not retained as a lunch aide for the 2013-2014 school year due to her "unacceptable attendance," but he does not appear to have considered that her poor attendance may have been due to her alleged physical limitations, as Plaintiff alleged. (TR 30-31.) To the contrary, he disregards this evidence because "that poor attendance could be caused by a number of reasons not relevant to a disability determination; for example, transportation problems." (TR 31.) This rationale, however, has no factual basis. With regard to Plaintiff's August 2011 injury, contrary to the ALJ's factual finding, Plaintiff did seek treatment on the day of her injury. (*Compare* TR 28, *with* TR 204-06.) The undersigned has already discussed the ALJ's findings with regard to Plaintiff's bastric bypass surgery. *See, supra* at 9-10.

Most notably, though, the ALJ's consideration of Plaintiff's activities of daily living is based

12

on speculation. The ALJ acknowledges that Plaintiff's alleged activities of daily living are "fairly limited," but he finds that "two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled." (TR 30.) "First [the ALJ notes], allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (*Id.*) As Plaintiff argues, though, the ALJ does not explain what type of objective evidence a claimant could possibly present to support such an assertion. "Secondly [the ALJ finds], even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (TR 30.) Again, the ALJ provides no insight into what "other reasons" he believes may be the cause of Plaintiff's limited daily activities.

Defendant argues that "the ALJ need not accept Plaintiff's claims at face value" and points to other portions of the record to support the ALJ's determination. (Docket no. 15 at 18-19.) Nevertheless, while the ALJ's opinion may be sufficiently specific to make clear the weight that he gave to Plaintiff's statements, the reasons for that determination are unclear, particularly where a number of the ALJ's factual findings are inaccurate. Therefore, this matter should be remanded so that the ALJ can clarify his credibility findings.

## VI.    CONCLUSION

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 14) be GRANTED IN PART AND DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 15) be DENIED. This matter should be remanded for proper discussion and consideration of Dr. Tobia's opinions with regard to Plaintiff's functional limitations and so that the ALJ can clarify his findings with regard to Plaintiff's credibility.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 17, 2015    s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

14

Dated: February 17, 2015         s/ Lisa C. Bartlett
                                 Case Manager